IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CEDRIC WILLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-516-BN |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| AS TRUSTEE, IGLOO SERIES TRUST; | § | |
| LOANCARE LLC; and SECURITY | § | |
| NATIONAL MORTGAGE COMPANY, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit now proceeding before the undersigned United States magistrate judge for all purposes under 28 U.S.C. § 636(c), *see* Dkt. No. 25, the Court recently (1) denied *pro se* Plaintiff Cedric Willis's motion for a temporary restraining order ("TRO") and/or preliminary injunction, requesting that the Court prevent a foreclosure sale of his home during the pendency of this litigation, *see* Dkt. Nos. 30, 31, 35, 36, & 38, and (2) issued an order and notice of deficiency addressing the Court's local civil rule requirement that litigants disclose the use of Generative Artificial Intelligence, as enforced by orders entered in this action (the "AI NOD"), *see* Dkt. Nos. 27 & 39; FED. R. CIV. P. 41(b); N.D. TEX. L. CIV. R. 7.2(f).

Willis filed a motion in response, which he then moved to amend, *see* Dkt. Nos. 40 & 41, through which he at least requests (1) reconsideration of the order denying the TRO and/or preliminary injunction; (2) that the Court "[i]mmediately rescind or amend" the AI NOD; and (3) that the Court grant him leave to amend his complaint.

For the following reasons, the Court GRANTS the motion to amend the motion [Dkt. No. 41] and DENIES the amended motion [Dkt. No. 40].

First, Willis offers no grounds to justify reconsidering the order denying the motion for a TRO and/or preliminary injunction, even considering the flexible standard of Federal Rule of Civil Procedure 54(b), under which the Court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1995) (en banc)); *see also Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2021 WL 5003273, at *2-*3 (E.D. Tex. Oct. 28, 2021) (determining that, because "[o]rders granting preliminary injunctions are interlocutory orders," Rule 54(b) governs (citation omitted)).

While Willis contends that the notice of default and intent to accelerate that he received "clearly satisfies the standard for imminent harm," Dkt. No. 40 at 2, even if that is so, "a substantial threat that he will suffer irreparable injury if the injunction is not granted" is just one requirement (of four) for obtaining preliminary injunctive relief, *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

And, although Willis has "the burden of persuasion on all four requirements,"

*Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (cleaned up), he only offers conclusions to support his request that the Court reconsider its finding that he has failed to show a substantial likelihood that he will prevail on the merits, *see, e.g.*, Dkt. No. 40 at 2 ("nearly doubl[ing] Plaintiff's monthly mortgage obligation, in clear violation of HUD's loss mitigation guidelines and standard mortgage servicing practices for FHA-insured loans").

Second, the Court will not rescind or amend the AI NOD.

Willis alleges in part that

> [t]he Court's notice itself sends a dangerous message – a message not only to Plaintiff, but to the Court's own staff, clerks, and peers: that a pro se litigant who dares to defend his constitutional rights using modern tools should be mocked, ridiculed, and falsely accused.
> The Court should be ashamed of itself for maligning a citizen's good-faith efforts without first verifying facts. Citations such as *Pruitt v. Deutsche Bank Nat'l Tr. Co.*, 2013 WL 789972 (N.D. Tex. Mar. 4, 2013) clearly exist. The Court's attempt to insinuate otherwise is a disgrace to the integrity of the judiciary.

Dkt. No. 40 at 3.

First, the Court's order did not forbid the use of tools such as Generative Artificial Intelligence (or "AI") or malign parties who elect to use AI. That order merely echoed the requirement in the Court's local civil rules that the parties disclose such use.

There are sound reasons for requiring this disclosure, including that "[i]t is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs." *Sanders v. United States*, ___ Fed. Cl. ____, No. 24-cv-1301, 2025 WL 957666, at *4 (Fed. Cl. Mar. 31,

2025) (citing Eugene Volokh, *Six Federal Cases of Self-Represented Litigants Citing Fake Cases in Briefs, Likely Because They Used AI Programs, Reason: Volokh Conspiracy* (Nov. 11, 2023, 10:27 AM), https://reason.com/volokh/2023/11/13/self-represented-litigants-use-ai-to-write-briefsproduce-hallucinated-citations); *see also Boggess v. Chamness*, No. 6:25-cv-64-JDK-JDL, 2025 WL 978992, at *1 (E.D. Tex. Apr. 1, 2025) ("Plaintiff's citation to a hallucinatory case was likely generated via artificial intelligence and violates this Court's Local Rule CV-11(g), which makes clear that 'generative artificial intelligence tools may produce factual and legal inaccuracies and reminds attorneys that they must verify the information that they submit to the court.'" (quoting *Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-281, 2024 WL 4882651, at *2 (E.D. Tex. Nov. 25, 2024))).

Examining one citation in a brief that Willis has filed in this proceeding – the case that Willis cited to the Court in support of his motion for a TRO and/or preliminary injunction, to bolster his contention that "[c]ourts routinely find irreparable harm where foreclosure would deprive a homeowner of their principal residence. *See Pruitt v. Deutsche Bank Nat'l Tr. Co.*, 2013 WL 789972 (N.D. Tex. Mar. 4, 2013)," Dkt. No. 30 at 3, which he insists clearly exists, *see* Dkt. No. 40 at 3 – that citation contains hallmarks of a nonexistent case generated by AI.

First, the Westlaw citation for the case points to other material on Westlaw (a 2013 State of Hawaii House Resolution). And, while an action filed in this federal judicial district does contain both parties Pruitt and Deutsche Bank, and there is a citation on Westlaw corresponding to that case, that case was filed in 2014, and the

Westlaw citation points to a 2015 order in that case granting a plaintiff's motion for attorneys' fees. *See Deutsche Bank Nat'l Tr. Co. v. Pruitt*, No. 3:14-cv-4221-G-BF, 2015 WL 5076755 (N.D. Tex. Aug. 27, 2015).

A litigant's using AI and then failing to verify the accuracy of the results it yields violates the litigant's Federal Rule of Civil Procedure 11 obligations. *See Sanders*, 2025 WL 957666, at *5 (citing FED. R. CIV. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that ... the claims, defenses, and other legal contentions are warranted by existing law.")).

The United States Court of Appeals for the Fifth Circuit "has made it clear that Rule 11 applies fully and completely to actions filed by *pro se* litigants." *Hick v. Bexar Cnty., Tex.*, 973 F. Supp. 653 (W.D. Tex. 1997) (collecting cases), *aff'd*, 137 F.3d 1352 (5th Cir. 1998); *see also Houston v. Sw. Airlines*, No. 3:17-cv-2610-N-BT, 2020 WL 774408, at *1 (N.D. Tex. Feb. 18, 2020) ("Although the Rule 11 standard applies equally to *pro se* parties as it does to attorneys, a court has 'sufficient discretion to take account of the special circumstances that often arise in *pro se* situations.'" (quoting FED. R. CIV. P. 11 advisory committee's notes)).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus … streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citation omitted).

And the Court agrees with court in *Sanders* that briefing "built on AI-generated cases that stand for legal propositions in direct contravention of actual case

law" "is the epitome of baseless" and that, "[w]hile courts afford *pro se* litigants considerable leeway, that leeway does not relieve *pro se* litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority." 2025 WL 957666, at *5 (citations omitted)); *cf. id.* ("Beyond the waste of resources and the violation of her Rule 11 obligations, Plaintiff's unquestioning reliance on AI hindered her own ability to effectively represent herself. Misled by the fake cases, Plaintiff cost herself an opportunity to make the best possible arguments in support of her claim for relief."); *Ferris v. Amazon.com Servs., Inc.*, No. 3:24-cv-304-MPM-JMV, 2025 WL 1122235, at *1 (N.D. Miss. Apr. 16, 2025) ("Trials are a search for the truth. Parties who cite false cases not only seek to secure unfair advantage, they are, in fact, avatars of a post-truth world.").

So, again, the Court will neither rescind nor amend its AI NOD but will again WARN all parties that the undisclosed use of AI, in violation of the Court's local civil rules and the Court's orders, will subject that party to sanctions. *See* Dkt. No. 39 at 2 ("[T]o the extent that any party uses Generative Artificial Intelligence going forward, the Court expects that such use will be disclosed as required by the local rules. Failure to do will may result in sanctions that could include the dismissal of this lawsuit."); *see also Sanders*, 2025 WL 957666, at *5 ("The Court notes that other judges have sanctioned attorneys for citing fake, AI-generated cases. These sanctions have included fines, requiring payment of the opposing party's fees, striking filings, dismissal of the action, and initiating disciplinary actions. While *pro se* litigants have been given more latitude than attorneys for the use of fake AI-generated cases, some

courts have sanctioned *pro se* litigants for this conduct. Nonetheless, given the relative novelty of AI, the Court recognizes that Plaintiff may not have been aware of the risk that AI programs can generate fake case citations and other legal misstatements. For this reason, many judges opt to warn – rather than sanction – *pro se* litigants who have improperly used AI instead of imposing sanctions. Here, too, the Court finds a warning to be appropriate, as the case must be dismissed for lack of jurisdiction and Defendant does not request sanctions. Under other circumstances, the Court may find sanctions to be appropriate, even for *pro se* litigants. Nevertheless, Plaintiff is now aware of the risks of using AI, and is on notice that she may be subject to sanctions should she cite fake, AI-generated legal authority again. Accordingly, Plaintiff – and future litigants in this Court – are advised that any filings with citations to nonexistent cases may result in sanctions, including the striking of filings, the imposition of filing restrictions, monetary penalties, or dismissal of the action." (citations omitted)).

Finally, to the extent that Willis requests leave to amend his complaint, the Court set out how parties may amend the pleadings in the Initial Scheduling Order entered on April 7, 2025:

> Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under [Federal Rule of Civil Procedure] 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Federal Rule of Civil Procedure 15(a)(2) then provides that, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).
> Accordingly, unless Rule 15(a)(1) permits an amended or

supplemental pleading to be filed without leave, or an amended or supplemental pleading is filed with the opposing party's written consent, a motion for leave must be filed to amend or supplement pleadings, and such motions for leave must be filed by **April 29, 2025**.

The Court generally will grant a timely-filed motion for leave to amend as a matter of course absent a showing of undue prejudice or futility. *See* FED. R. CIV. P. 15(a).

But no amendments will be allowed after this deadline except on a showing of good cause. *See* FED. R. CIV. P. 16(b)(4).

And any motion for leave to amend a pleading must include both a clean version of the proposed amended pleading and a version in which all new or deleted language in the proposed amended pleading is noted by using a program's redline function or through underlining, brackets, highlighting, and the like. *Accord* N.D. TEX. L. CIV. R. 15.1.

Dkt. No. 27, ¶ 3.

SO ORDERED.

DATED: April 28, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE